UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH SIMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. 1:20-cv-02845-CKK |
| v. | ) |
| | ) |
| OFFICER DANIEL P. SKELONC, *et. al.* | ) |
| | ) |
| Defendants | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT DANIEL SKELONC'S MOTION TO DISMISS THE COMPLAINT**

**INTRODUCTION**

The Plaintiff submits this memorandum in opposition to the Defendant Daniel Skelonc's Motion to Dismiss the Complaint under Rule 12(b)(6). The Plaintiff's Complaint alleges use of excessive force against the Plaintiff by the Defendant in violation of his 4th Amendment rights. The Defendant did not have reasonable articulable suspicion to stop the Plaintiff and his use of force exceeded the use of force necessary to stop the Plaintiff. The Plaintiff incorporates the arguments made in its Opposition to Defendant District of Columbia's Motion to Dismiss the Complaint. [11].

The Plaintiff has no objection to dismissing the common law claims for false arrest, false imprisonment, and intentional infliction of emotional distress (Counts II, III and IV) as being barred by the one-year statue of limitations. § 12-301. The Plaintiff opposes dismissal of the other counts.

**FACTS**

In this case, the Complaint alleges unconstitutional violation of excessive force. The facts as pleaded are that on or about February 6, 2019, the Defendant along with his partner

received a call for an act of shoplifting at a 7-11 store located in Georgia Ave NW, Washington DC.  Specifically, the radio dispatcher reported that two black men were trying to steal dog food from the store. The dispatcher also stated that one of the suspects was wearing a black jacket and the other a black jacket and black pants.  Compl. ¶ 6.  Plaintiff was not wearing black clothes but had a tan jacket and blue jeans.  *Id*. ¶ 12.

The Plaintiff never entered the store.  However, he stopped outside the store to speak to some acquaintances. *Id*. ¶7.  When he saw the police cruiser pull into the parking lot of the store he began to walk away towards a bus stop about 100 yards away.  He did not want to be involved in any police situation and saw there was a "no loitering" sign posted at the store. *Id*. ¶ 8.

The Defendant and his partner entered the store and spoke with the manager. The manager gave Defendant a vague description of the location of the suspect.  The manager pointed out the glass front door of the store towards the bus stop stating, "he's in front, right there." Defendant attempted to clarify as the glass was dirty and the line of visibility was not clear. Right where? Defendant asked again the manager then replied again "in front right there." Plaintiff was not wearing black clothes but had a tan jacket and blue jeans.  *Id*. ¶ 9.

The Defendant exited the store and saw the Plaintiff and his acquaintance directly in front of the store on the sidewalk. Plaintiff was walking towards the bus stop and speaking with an acquaintance when he saw first Defendant approaching them. *Id*. ¶ 10.

The Defendant called out to the two men, "gentlemen gentleman." *Id*. ¶ 11. Plaintiff and his acquaintance did not respond and continued to walk away at the same pace. Defendant then yelled at the  "guy in the gray shirt." *Id*.  The Plaintiff, who was wearing a tan jacket and blue jeans, continued walking. *Id*. ¶ 12.  Defendant then began yelling at Plaintiff in an angrier tone of voice. "Plaintiff appearing confused turned his head towards the Defendant and answered, "ain't

no grey shirt" explaining why he didn't' answer the Defendant. *Id*. ¶ 13. Defendant replied angrily, "well whatever it is." Plaintiff asked, "alright so you yell at human beings?" to which Defendant said, "yes i do." *Id*. ¶ 14. Plaintiff made a dismissive sound and turned and began walking away from the Defendant.

Defendant grabbed the Plaintiff's right arm and jerked it backwards forcefully, spinning complainant around to face him. Plaintiff immediately took his arm away and yelled at the Defendant and said, "why you just grab me?" You don't got no right to put your hands on me like that." Defendant replied in a threatening tone, "because you don't walk away from me." Plaintiff said, "alright come on." Defendant then shook his finger in the Plaintiff's face and yelled in an even angrier tone "you don't walk away from me you understand me? *Id*. ¶ 15. Plaintiff agreed to return to the store with the Defendant and the manager confirmed that Plaintiff had never been in the store and was not a suspect. *Id*. ¶ 16.

The Defendant's action caused the Plaintiff serious physical injury. As a result of the Defendant forcefully grabbing Plaintiff's arm and jerking it backwards, the Plaintiff experienced back spasms and went to the hospital shortly thereafter for injuries to his chest, shoulder, and lower back. A complaint against the Defendant for use of excessive or unnecessary force and insulting, demeaning, or humiliating language or conduct was upheld by the Office of Police Complaint. *Id*. ¶ 21.

**Legal Standard for a Rule 12(b)(6) Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, not whether the Plaintiff is likely to succeed on the merits. *Singh v. District of Columbia*, 881 F.Supp.2d 76, 81 (D.D.C. 2012). Under Rule 8(a) all that is require is that the complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." "A complaint must be sufficient to give "the Defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Brown v. Short*, 729 F.Supp.2d 125, 131 (D.D.C. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007). A "complaint that states a plausible claim for relief survives a motion to dismiss." *Id*.

In considering a Rule 12(b)(6) motion, the court must presume the factual allegations of the complaint to be true and construes them liberally in the Plaintiff's favor. It is not necessary for the Plaintiff to plead all elements of his *prima facie* case in the complaint, or to plead law or match facts to every element of a legal theory. *Singh, id.* Nonetheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." "The plausibility standard is not akin to a `probability requirement,' but it asks for more than a sheer possibility that a Defendant has acted unlawfully." *Id*. (citations omitted).

## ARGUMENT

### Plaintiff Alleges A Constitutional Violation for Excessive Force Against Officer Skelonc (Count I)

In analyzing a claim for excessive force under Section 1983, the court must "assess whether the use of force was reasonable by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Hall v. District of Columbia*, 867 F.3d 138, 157 (D.C. Cir. 2017) (citations omitted). The court must carefully pay attention to the facts and circumstances of the case, including the (a) severity of the crime at issue, (b) whether the suspect was posed an

immediate threat to the safety of the officer and others, and (c) whether he actively resisted or attempted to evade arrest by flight. *Id*.  "An officer's act of violence violates the Fourth Amendment's prohibition against unreasonable seizures if it furthers no governmental interest, such as apprehending a suspect or protecting an officer or the public." *Id*.

The Defendant stopped Plaintiff for a minor offense.  The allegations were that two men were trying to shoplift dogfood from inside the store.  However, at least two men and the Plaintiff and possibly as fourth person were outside the store.  The Plaintiff never went inside the store.  The Defendant attempted to stop a person with a gray shirt.  The Plaintiff, who was wearing a tan jacket and blue jean, had no reason to believe that the Defendant was trying to stop him.  Therefore, it was reasonable for him to continue minding his own business and continue walking.

The Plaintiff was not a threat to the officer or others when the officer forcefully jerked his arm to stop him.  The Plaintiff did not attempt to resist or evade the officer.  When the officer explained the circumstances, he volunteered to go back to the store.  Here, forcefully stopping the Defendant did not further any governmental interest in investigating the case. Had the officer conducted a much more thorough investigation and obtained a much more detailed information about the suspects, the Plaintiff would have not been injured.  The facts of the Complaint establish that Defendant's use of force was unjustified.

**Defendant Did Not Have Reasonable Articulable Suspicion to Stop Plaintiff**

The Defendant claims that he was justified in stopping the Plaintiff because "there was a report of shoplifting, that the manager identified a group of people standing outside his store, and that that upon leaving the store, [Defendant] Skelonc observed Plaintiff in the location the

manager identified." (See Deft's Motion Dismiss at 4).

The lookout for the suspect described in the Complaint here was very specific. "The radio dispatcher reported that two black men were trying to steal dog food from the store. The dispatcher also stated that one of the suspects was wearing a black jacket and the other a black jacket and black pants." Comp. *Id*. ¶ 6. The Plaintiff did not fit the description given by the store owner or dispatcher, as he was wearing a tan jacket and blue jeans. Also, the store manager did not identify a group of people but only two black men. Accordingly, the Defendant did not have reasonable articulable suspicion to stop the Plaintiff under *Terry v. Ohio*, 392 U.S. 1 (1968).

**Defendant is Not Entitled to Qualified Immunity**

The Defendant is not entitled to qualified immunity because he violated clearly established constitutional rights and the police department's own general order against excessive force. In *Hall v. District of Columbia*, 867 F.3d 138, 157 (D.C. Cir. 2017), the court denied qualified immunity to Defendant police officer where the complaint alleges that the officer used excessive force against the Plaintiff, and the complaint contained no indication that the Plaintiff posed a threat to the officers or that she had committed a serious offense.

Similarly, in this case, the Defendant used excessive against the Plaintiff that resulted in serious physical injury that caused him to go to the hospital. Defendant's used of force against the Plaintiff furthered no government interest in apprehending a suspect, protecting the officer or the public. His use of force against Plaintiff was found to be unreasonable and excessive by the Office of Police Complaints. Accordingly, the Defendant is not entitled to qualified immunity.

**Common Law Claims**

The Plaintiff has no opposition to dismissing the common law claims for false arrest, false imprisonment, and intentional infliction of emotion distress (Counts II, III, and IV) as they were filed after the one-year statute of limitations.

WHEREFORE, for the reasons given above, it is respectfully requested that the Defendant Daniel Skelonc's Motion to Dismiss the Complaint, be granted in part and denied in part.

Respectfully Submitted,

Dated: 1/25/21

*/s/ Henry A. Escoto*
Henry A. Escoto, #448408
503 D Street, NW, Suite 120
Washington, DC 20001
(202) 898-4700
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25 January 2021, a copy of the foregoing was served electronically upon counsel for the Defendants, Christina Okereke and Matthew Trout, Assistant Attorney General, 400 Sixth Street, NW, Washington, D.C. 20001.

*/s/ Henry A. Escoto*
Henry A. Escoto