UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH SIMMONS,<br><br>      Plaintiff,<br><br>      v.<br><br>OFFICER DANIEL SKELONC, in his individual and official capacity and DISTRICT OF COLUMBIA,<br><br>      Defendants. | Civil Action No. 20-2845 (CKK) |

MEMORANDUM OPINION
(July 29, 2021)

Plaintiff Joseph Simmons brings this action against Defendants Officer Daniel Skelonc of the Metropolitan Police Department ("MPD") and the District of Columbia ("the District") alleging violations of his Fourth Amendment rights under 42 U.S.C. § 1983, false arrest, false imprisonment, intentional infliction of emotional distress, and respondeat superior liability. Compl. ¶¶ 22–30, ECF No. 1. These allegations stem from Officer Skelonc's response to a reported shoplifting incident; Plaintiff claims Officer Skelonc impermissibly seized him and used excessive force when incorrectly confronting him as the suspected shoplifter. *See id.* ¶¶ 6, 15–20. Presently before the Court are motions to dismiss filed by the District (ECF No. 8) and Officer Skelonc (ECF No. 12).

In his response to Officer Skelonc's Motion to Dismiss, Plaintiff consented to dismissal of his common law claims of false arrest, false imprisonment, and intentional infliction of emotional distress (Counts II, III, and IV), acknowledging that the applicable one-year statute of limitations elapsed before his Complaint was filed.[1]  Pl.'s Opp'n to Def. Skelonc's Mot. at 7, ECF No. 16.

---

[1] In his Opposition to the District's Motion to Dismiss (filed before his Opposition to Officer Skelonc's Motion to Dismiss), Simmons did not acknowledge that the common law claims were time-barred. However, Plaintiff concedes in his Opposition to Officer Skelonc's Motion to Dismiss that he "has no objection to dismissing the common law

1

In addition, in his response to the District's Motion to Dismiss, Plaintiff consented to dismissal of his § 1983 claim (Count I) against the District, acknowledging that he did not allege facts "that support a finding of municipal liability under section 1983." Pl.'s Opp'n. to Def. D.C.'s Mot. at 5, ECF No. 11.  Based on Plaintiff's consent to the dismissal of these claims, the Court shall order that Count I as to the District and Counts II, III, and IV as to both defendants be **DISMISSED.**

The remaining claims at issue in the pending motions are: (1) Plaintiff's § 1983 claim based on alleged Fourth Amendment violations against Officer Skelonc (Count I); and (2) Plaintiff's "respondeat superior liability" claim against the District (Count VI).[2]  Upon review of the pleadings,[3] the relevant legal authority, and the record as a whole, the Court shall **GRANT** Defendants' motions to dismiss as to both remaining claims and shall **DISMISS** the Complaint.

## I.   BACKGROUND

For the purposes of Defendants' motions to dismiss, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint.[4]  The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 314–15 (D.C. Cir. 2014).

---

claims for false arrest, false imprisonment, and intentional infliction of emotional distress (Counts II, III and IV) as being barred by the one-year statute of limitations. [D.C. Code] § 12–301." Pl.'s Opp'n to Def. Skelonc's Mot. at 1.

[2] Plaintiff's Complaint contains five claims, but labels the fifth count as "Count VI." *See* Compl. ¶¶ 26–30.  For consistency with the Complaint, the Court may refer to Plaintiff's "respondeat superior liability" claim as "Count VI."

[3] The Court's consideration has focused on the following:
- Def. D.C.'s Mot. to Dismiss ("Def. D.C.'s Mot."), ECF No. 8;
- Def. Daniel Skelonc's Mot.to Dismiss ("Def. Skelonc's Mot."), ECF No. 12;
- Pl.'s Opp'n to Def. D.C.'s Mot. to Dismiss ("Pl.'s Opp'n to Def.  D.C.'s Mot."), ECF No. 11-1;
- Pl.'s Opp'n  to Def. Skelonc's Mot. to Dismiss ("Pl.'s Opp'n to Def. Skelonc's Mot."), ECF No. 16-1;
- Def. D.C.'s Reply to Pl.'s Opp'n to Mot. to Dismiss ("Def. D.C.'s Reply"), ECF No. 14; and
- Def. Skelonc's Reply to Pl.'s Opp'n to Mot. to Dismiss ("Def. Skelonc's Reply"), ECF No. 17.

[4] The Complaint indicates that the alleged facts are based on body-worn camera footage.  *See* Compl. ¶ 12.

Around midnight on February 7, 2019, Plaintiff was standing outside a store in Northwest Washington, D.C. with an acquaintance. Compl. ¶¶ 6–7. Shortly after Plaintiff stopped outside the store, MPD Officer Skelonc and his partner pulled into the parking lot, in response to a report of shoplifting by the store's manager. *Id.* ¶ 6. The dispatcher described the suspects to the officers as two black men wearing black jackets. *Id*. Plaintiff indicates that he arrived at the store after the store manager reported the shoplifting incident, but before Officer Skelonc pulled into the parking lot. *Id*. ¶¶ 6–7.

Officer Skelonc entered the store and spoke with the manager to determine if the shoplifting suspects were still nearby. *Id*. ¶ 9. The manager pointed towards the glass door at the front of the store and said, "he's in front, right there." *Id*. Officer Skelonc attempted to clarify where the manager was pointing, and the manager again indicated that he thought the suspects were "in front." *Id*. Plaintiff indicates that he was standing directly in front of the store when Officer Skelonc was speaking with the manager. *Id*. ¶ 10.

After the manager pointed to the men standing outside the front of the store, Officer Skelonc walked outside and called out to Plaintiff and his acquaintance, who had both begun walking away from the store towards a bus stop. *Id*. ¶¶ 10–11. Officer Skelonc initially called out "gentlemen, gentlemen," and then called to the "guy in the gray shirt." *Id*. ¶ 11. Plaintiff was wearing a tan jacket and blue jeans. *Id*. ¶ 12. Not realizing that Officer Skelonc was speaking to him, Plaintiff continued to walk away. *Id*. ¶¶ 10–12. When Plaintiff failed to stop, Officer Skelonc began yelling, and the two men got into a heated argument. *Id*. ¶¶ 13–14. Plaintiff, now alerted to the fact that Officer Skelonc wanted to speak with him and was attempting to stop him, "made a dismissive sound and turned and began walking away." *Id*. ¶ 15. Officer Skelonc "grabbed the [P]laintiff's right arm and jerked it backwards forcefully, spinning [Plaintiff] around to face him."

3

*Id.* Officer Skelonc explained to Plaintiff that the store manager had reported a shoplifting incident. *Id.* ¶ 16. Plaintiff, who had not been inside the store that evening, volunteered to return to the store to "prove his innocence." *Id.* When Officer Skelonc and Plaintiff went back inside the store, the store manager confirmed that Plaintiff was not inside the store that evening and was not the person who had shoplifted. *Id.* ¶ 18. Officer Skelonc then "stopped communicating" with Plaintiff. *Id.* ¶ 19.

On September 29, 2020, Plaintiff filed his Complaint in this case, bringing claims against the District of Columbia and Officer Skelonc. *See* Compl. Each defendant subsequently moved to dismiss Plaintiff's complaint. Both motions are now ripe for the Court's consideration.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Both defendants have moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The factual allegations within a complaint, if accepted as true, must be sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp.*, 758 F.3d at 315.

## B. Qualified Immunity

Officer Skelonc has also moved to dismiss Plaintiff's remaining § 1983 claim on the basis that his actions are protected by qualified immunity. Def. Skelonc's Mot. at 4–5. Public officials have immunity from suits brought under § 1983 unless their alleged conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted). To determine if qualified immunity will protect the official, the Court applies a two-part test: (1) whether the officials "violated a federal statutory or constitutional right" and (2) whether "the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). The Court has the discretion to determine which of the two prongs to proceed on first. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Once a defendant asserts a defense of qualified immunity, the burden falls to the plaintiff to show that the official is not entitled to qualified immunity. *Winder v. Erste*, 905 F. Supp. 2d 19, 28 (D.D.C. 2012). At the motion to dismiss stage, "a plaintiff must allege sufficient facts to establish that the defendants are *not* entitled to qualified immunity." *Patterson v. United States*, 999 F. Supp. 2d 300, 311 (D.D.C. 2013). The plaintiff must "show that the particular right in question—narrowly described to fit the factual pattern confronting the [official]—was clearly established" at the time of the official's conduct. *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal citations and quotation marks omitted).

### III. DISCUSSION

As noted above, Plaintiff has consented to the dismissal of his § 1983 claim in Count I as it relates to the District, and his common law claims in Counts II, III, and IV. Accordingly, the only remaining claims at issue in the pending motions to dismiss are Plaintiff's claim brought pursuant to § 1983 based on alleged Fourth Amendment violations by Officer Skelonc (Count I), and his respondeat superior claim against the District of Columbia (Count VI). For the reasons set forth below, the Court shall grant the motions to dismiss as to the remaining claims and shall order that the Complaint be dismissed.

**A. Section 1983 Claims Against Officer Skelonc Based on Alleged Fourth Amendment Violations (Count I).**

In Count I of his Complaint, Plaintiff alleges that Officer Skelonc violated his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 by seizing him without probable cause and by using excessive force. Compl. ¶¶ 22(b)–(c). Officer Skelonc argues that Plaintiff has failed to state a plausible claim of constitutional violations because the allegations describe, at most, a lawful *Terry* stop during which he used a reasonable amount of force. Def. Skelonc's Mot. at 3–4. Officer Skelonc further argues that even if Plaintiff has alleged a constitutional violation, he is entitled to qualified immunity. The Court concludes that Plaintiff has failed to state a plausible claim of an unconstitutional seizure or an unreasonable use of force, and so shall grant Officer Skelonc's motion with respect to both claims. In the alternative, the Court concludes that Officer Skelonc is entitled to qualified immunity with respect to both claims.

**1. Investigatory Stop**

Plaintiff first alleges that Officer Skelonc "without sufficient probable cause . . . detained him against his will," in violation of his constitutional rights under the Fourth Amendment. Compl. ¶ 22(b). Officer Skelonc argues that he conducted a lawful investigatory stop based on a

reasonable articulable suspicion that Plaintiff had shoplifted. *See* Def. Skelonc's Mot. at 3–4 (citing Def. D.C.'s Mot. at 4–5). Before addressing the parties' arguments, the Court briefly discusses relevant Fourth Amendment principles.

The Fourth Amendment ensures the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Const. amend. IV. A "seizure" under the Fourth Amendment occurs "when physical force is used to restrain movement or when a person submits to an officer's show of authority." *United States v. Delaney*, 955 F.3d 1077, 1081 (D.C. Cir. 2020) (internal citations and quotation marks omitted). The Fourth Amendment generally requires that an officer have probable cause and a warrant to seize a person lawfully. *See Payton v. New* York, 445 U.S. 573, 603 (1980). As an exception to this general requirement, an officer may "briefly detain a citizen" where the officer "has a reasonable, articulable suspicion that 'criminal activity may be afoot.'" *United States v. Edmonds*, 240 F.3d 55, 59 (D.C. Cir. 2001) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). To determine whether an officer had reasonable suspicion to conduct a "*Terry* stop," courts "look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious." *United States v. McKie*, 951 F.2d 399, 402 (D.C. Cir. 1991) (per curiam). The burden for showing that reasonable suspicion existed to justify a stop rests with the government. *See United States v. Castle*, 825 F.3d 625, 634 (D.C. Cir. 2016). Moreover, the stop must be brief, and the officer must work as quickly as possible to "confirm or dispel their suspicions." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

Plaintiff alleges that Officer Skelonc violated his Fourth Amendment rights by seizing him without probable cause. *See* Compl. ¶ 22(b). Officer Skelonc argues that, at most, his actions amounted to a lawful *Terry* stop supported by a reasonable articulable suspicion that Plaintiff had

shoplifted. Def. Skelonc's Mot. at 3–4. The allegations in the Complaint demonstrate that Officer Skelonc had a reasonable articulable suspicion to conduct an investigatory stop: after Officer Skelonc arrived at the store in response to a report of shoplifting, the store manager pointed through the glass front door of the store and said the suspects were "directly in front of the store," where Plaintiff admits he was standing, Compl. ¶ 10; and when Officer Skelonc asked that the manager clarify the suspects, the store manager pointed towards Plaintiff and his acquaintance, *id*. ¶ 9. The manager's repeated identification of Plaintiff as the suspected shoplifter supported a reasonable articulable suspicion that Plaintiff was engaged in criminal activity. *See, e.g.*, *United States v. Bass*, Case No. 19-CR-206 (RJL), 2020 WL 1873590, at *2 (D.D.C. Apr. 15, 2020) (noting that identification by a witness on the scene of a suspect supported officer's reasonable articulable suspicion).

Plaintiff argues that the dispatcher's description of the suspects to Officer Skelonc as two men wearing "black" jackets undermines any reasonable suspicion that Plaintiff was the shoplifter because Plaintiff was wearing a tan jacket. Pl.'s Opp'n. to Def. Skelonc's Mot. at 6. However, "a precise color match to a lookout is not an indispensable element of reasonable suspicion." *United States v. Abdus-Price*, 518 F.3d 926, 930 (D.C. Cir. 2008); *see also United States v. Turner*, 699 A.2d 1125, 1129 (D.C. 1997) ("Because we examine the totality of the circumstances and require far less than certainty, we have routinely held that an imperfect description, coupled with close spatial and temporal proximity between the reported crime and seizure, justifies a *Terry* stop"); *Robinson v. United States,* 756 A.2d 448, 456 (D.C. 2000) (finding reasonable articulable suspicion even where there were differences in clothing descriptions in part because [plaintiff] was arrested only one block away and within an hour of the alleged crime). The "close spatial and temporal proximity" of the stop to the reported crime, together with the manager's identification

of Plaintiff as the possible suspect, provided sufficient justification for Officer Skelonc's brief detention of Simmons despite the discrepancy between the color of Plaintiff's jacket and the color described by the dispatcher.

Moreover, as Plaintiff acknowledges, the stop conducted by Officer Skelonc was "minimal." Pl.'s Opp'n. to Def. D.C.'s Mot. at 1.  When determining whether a detention is sufficiently brief to be considered an investigative stop, courts should "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly" *Sharpe*, 470 U.S. at 686.  After stopping Plaintiff, Officer Skelonc explained to him that the manager of the store had reported a shoplifting incident.  Compl. ¶ 16.  Officer Skelonc and Plaintiff then immediately returned to the storefront and the manager confirmed that Plaintiff had not entered the store that evening.  *Id.* ¶¶ 17–18.  Plaintiff does not allege that the detention continued beyond this point.  *See id.* ¶¶ 18–19.  Nor does he identify any examples of unnecessary delay by Officer Skelonc.  The Complaint describes a brief stop, during which Officer Skelonc took immediate steps to investigate his suspicion of Plaintiff, resulting in a seizure "so minimally intrusive as to be justifiable on reasonable suspicion." *United States v. Place*, 462 U.S., 696, 709 (1983).

Construing the factual allegations in Plaintiff's favor, the Complaint describes a lawful investigatory stop.  Accordingly, the Complaint fails to state a plausible claim for a Fourth Amendment violation based on an unreasonable seizure.

   2. **Excessive Force**

Plaintiff also claims that Officer Skelonc violated the Fourth Amendment by using excessive force during the stop—namely, by grabbing Plaintiff's arm and spinning him around to prevent him from walking away from the store.  *See* Pl.'s Opp'n to Skelonc's Mot. at 5.  Officer

9

Skelonc argues that his actions did not violate the Fourth Amendment because he used minimal force, which was reasonable in view of the surrounding circumstances. Def. Skelonc's Reply at 1–2. The Court concludes that the use of force alleged in the Complaint is reasonable based on the totality of the circumstances and therefore fails to state a claim for a Fourth Amendment violation. *See Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987) (affirming motion to dismiss for failure to state a claim where the court was unable to "conclude that [the officer] used unreasonable force" based on the facts as alleged in the complaint). Before addressing the parties' arguments, the Court shall again briefly discuss the relevant Fourth Amendment principles.

As the Supreme Court has explained, the right of police officers to make "an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. (citation omitted). However, the force used must be objectively reasonable under the circumstances. *Id* at 397. To determine whether an officer's use of force was reasonable, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

According to the allegations in the Complaint, Officer Skelonc only used force after Plaintiff refused to stop. Compl. ¶ 15. Although the Complaint describes some initial confusion about whether Officer Skelonc was addressing Plaintiff to direct him to stop, Plaintiff "made a dismissive sound and turned and began walking away from" Officer Skelonc even after he was aware that Officer Skelonc was addressing him and wanted him to stop. *Id*. ¶ 15. Officer Skelonc

prevented Simmons from continuing to walk away by grabbing his arm and turning him around to face him so they could speak. *Id*.

Based on these allegations, Plaintiff has failed to plead a sufficient factual basis to conclude that Officer Skelonc used an unreasonable degree of force. An officer is permitted to use some amount of force when needed to restrain or stop a suspect. Otherwise, "*Terry* stops would be outlawed. Defendants would simply disobey the police and run, knowing that the police would then need probable cause to chase and tackle them." *United States v. Wilson*, No. 11–0275, 1994 WL 408264, at *2 (D.C. Cir. May 5, 1994) (per curiam). Although Simmons argues that he "did not attempt . . . to evade the officer," Pl.'s Opp'n to Def. Skelonc's Mot. at 5, he nonetheless indicates that refused to stop even after it became clear that Officer Skelonc was speaking to him and wanted him to stop, Compl. ¶ 15. Considering these circumstances, the force used by Officer Skelonc—grabbing Plaintiff's arm—was not objectively unreasonable.

In his Opposition to Officer Skelonc's Motion to Dismiss, Plaintiff claims that he was seriously injured when Officer Skelonc grabbed him, contending, "As a result of [Officer Skelonc] forcefully grabbing Plaintiff's arm and jerking it backwards, the Plaintiff experienced back spasms and went to the hospital shortly thereafter for injuries to his chest, shoulder, and lower back." Pl.'s Opp'n to Def. Skelonc's Mot. at 3. Plaintiff failed to include this allegation of physical injury in his complaint; a plaintiff may not amend his complaint by the briefs in opposition to a motion to dismiss. *See, e.g., Kelleher v. Dream Catcher, LLC*, 263 F. Supp. 3d 322, 327 n. 1 (D.D.C. 2017); *Perkins v. Vance-Cooks*, 886 F. Supp. 2d 22, 29 n. 5 (D.D.C. 2012). Even if the Court were to consider the severity of the alleged injury, it is not dispositive of whether an officer used excessive force. *See Wardlaw v. Pickett*, 1 F.3d 1297, 1304 n.7 (D.C. Cir. 1993) ("Although the severity of

11

[plaintiff's] injuries is not by itself the basis for deciding whether the force used was excessive, it does provide some indication of the degree of force [defendant] used.").

Considering the totality of the circumstances alleged in the Complaint, the Court concludes that the allegations fail to state a claim for an unreasonable use of force in violation of the Fourth Amendment

### 3. Qualified Immunity

Although the Court concludes that the allegations in the Complaint fail to state a plausible claim of any Fourth Amendment violation, it also finds that Officer Skelonc is entitled to qualified immunity for his conduct. This conclusion provides an alternative basis for granting Officer Skelonc's motion to dismiss.

As noted *supra* Section II(B), once a defendant asserts a defense of qualified immunity, the burden then falls to the plaintiff to show that the official is not entitled to qualified immunity. *See Winder*, 905 F. Supp .2d at 28.   Here, Plaintiff has not "identified a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation 'under similar circumstances.'" *Goolsby v. Dist. of Columbia*, 317 F. Supp. 3d 582, 591 (D.D.C. 2018) (quoting *Wesby*, 138 S. Ct. at 591).  Plaintiff cites only *Hall v. District of Columbia*, 867 F.3d 138 (D.C. Cir. 2017) to argue that Officer Skelonc is not entitled to qualified immunity for use of excessive force; he offers *no* legal authority—much less a "controlling case"—finding a Fourth Amendment violation under similar circumstances related to his claim for an illegal seizure.  Pl.'s Opp'n to Def. Skelonc's Mot. at 6.  With respect to the seizure claim, Plaintiff relies only on general legal principles that Officer Skelonc did not have reasonable articulable suspicion to stop him.  *Id.*  But "citations to such general principles are insufficient to show that no reasonable

12

officer would have believed the officers' actions in stopping [the plaintiff] were constitutional." *Goolsby*, 317 F. Supp. 3d at 592.

As to Plaintiff's excessive force claim, Plaintiff relies on *Hall*, a case in which the plaintiff was "slammed against a wall," dragged out of a bar, handcuffed, forced to her knees on the sidewalk, and detained for forty-five minutes before the officers took basic steps to resolve what turned out to be a false accusation of theft of services. *Id*. at 145. The Court does not find *Hall* to be on point with the allegations described here. *See Doe v. District of Columbia*, 796 F.3d 96, 104 (D.C. Cir. 2015) ("Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or [ ] Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." (internal citations and quotation marks omitted)). The officers in *Hall* used significantly more force than what this Complaint describes, and so that decision would not convey to a reasonable officer that his conduct amounted to any "clearly established" constitutional violation. Moreover, in *Hall*, the court denied the officer qualified immunity based on the officer's failure to take basic steps to verify that the plaintiff actually committed the crime for which she was accused, *Hall*, 867 F. 3d at 165—not, as Plaintiff contends, because "the complaint contained no indication that the Plaintiff posed a threat to the officers or that she had committed a serious offense." Pl.'s Opp'n. to Skelonc's Mot. at 6. Here, unlike in *Hall*, Officer Skelonc endeavored to verify the identity of the shoplifting suspects by asking the store manager to identify them. Plaintiff offers no other legal authority and therefore has failed to carry his burden to demonstrate that Officer Skelonc is not entitled to qualified immunity. *See id.* at 6.

Because Plaintiff has failed to "allege sufficient facts to establish that [Officer Skelonc] is *not* entitled to qualified immunity," *Patterson*, 999 F. Supp. 2d at 311, and has failed to

13

demonstrate that "the particular right in question—narrowly described to fit the factual pattern confronting the [official]—was clearly established," *Dukore*, 799 F.3d at 1145, qualified immunity provides an additional basis for dismissing Plaintiff's remaining claims against Officer Skelonc.

### B. Respondeat Superior Claim Against the District of Columbia (Count VI)

In Count VI of his Complaint, Plaintiff pleads a claim of "respondeat superior" against the District. Respondeat superior is not a stand-alone tort claim, and there are no remaining claims to which the theory of respondeat superior could be applied to create liability for the District. Accordingly, the Court shall dismiss Count VI.

Respondeat superior is not available as a theory of municipal liability for claims brought under 42 U.S.C § 1983. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bd. Of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior."). Plaintiff has conceded that the facts alleged in the Complaint are insufficient to state a plausible claim for municipal liability based on Officer Skelonc's actions. Pl's Opp'n. to Def. D.C.'s Mot. at 5 ("The Plaintiff agrees that the Complaint fails to allege facts that support a finding of municipal liability under section 1983."). Moreover, where, as here, a court concludes that an official is immune from § 1983 liability, "the District's liability is precluded." *Dist. of Columbia v. Evans*, 644 A.2d 1008, 1018 (D.C. 1994).

To the extent Plaintiff seeks to assert a respondeat superior theory of liability against the District based upon his common law tort claims—which he has conceded are time-barred— that argument also fails. "Respondeat superior" is not an independent tort claim, but rather a legal theory of vicarious liability that transfers liability from an agent to its principals. *See Convit v. Wilson*, 980 A.2d 1104, 1114 (D.C. 2009) ("Vicarious liability . . . is merely a legal concept used

to transfer liability from an agent to a principal and includes the theory of respondeat superior as developed in agency law.") (internal quotation marks omitted); *Logan v. Jones Lang LaSalle Americas, Inc*. No. 18-CV-2278 (APM), 2019 WL 1960208, at *1 n.1 (D.D.C. May 2, 2019) ("'[R]espondeat superior' is not a stand-alone claim, but rather a basis for finding Defendants liable for the conduct of their employees or agents.").

Plaintiff cites *Bostic v. District of Columbia*, 906 A.2d 327 (D.C. 2006) for the proposition that "the District of Columbia may be sued only for the torts of its agent police officers if there exists a *respondeat superior* relationship between the officers and the District." Pl.'s Opp'n to Def. D.C.'s Mot. at 7 (citing *Bostic*, 906 A.2d at 331). But that case does not establish that "respondeat superior" is a stand-alone tort claim. Rather, in *Bostic*, the plaintiff sued the District based on tortious acts allegedly committed by a United States Capitol Police officer, contending that the District was responsible for the officer's actions. *Bostic*, 906 A.2d at 329. The District of Columbia Court of Appeals concluded that the District did not have an agency relationship with the federal police officer and therefore the complaint had been properly dismissed against the District. *Id.* at 329, 331–32. The court did *not* consider whether "respondeat superior" is a stand-alone claim, but instead analyzed whether such a relationship existed for the District to be held vicariously liable for the tortious actions of the individual officer. Plaintiff's reliance on *Bostic*, therefore, is unpersuasive.

Because "respondeat superior" is not an independent tort claim, the Court shall grant the District's motion to dismiss.

## IV.  CONCLUSION

For the foregoing reasons the Court shall GRANT the motions to dismiss filed by the District (ECF No. 8) and Officer Skelonc (ECF No. 12) and ORDER that Plaintiff's Complaint be dismissed.  An appropriate Order accompanies this Memorandum Opinion.


Date: July 29, 2021                                              /s/
                                                                 COLLEEN KOLLAR-KOTELLY
                                                                 United States District Judge